IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Adam Titus (R43512), ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 23-cv-02036 |
| v. ) | |
| ) | Judge John F. Kness |
| Placement Officer Thornton *et al.*, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Plaintiff's amended complaint (Dkt. 23) is dismissed with prejudice on screening for failure to state a claim. Plaintiff is advised that, in any future civil action or appeal he might bring while a prisoner, this dismissal may be counted as one of Plaintiff's three allotted dismissals under 42 U.S.C. § 1915(g). *See, e.g.*, *Hill v. Madison County*, 983 F.3d 904, 906-07 (7th Cir. 2020). Plaintiff's motion "in compliance with the court's order" (Dkt. 24) is denied as moot, and Plaintiff's motion for leave to submit a second amended complaint (Dkt. 27) is denied. See accompanying Statement for details. Enter separate final judgment order. Civil case terminated.

**STATEMENT**

Illinois prisoner Adam Titus initiated this federal lawsuit *pro se* under 42 U.S.C. § 1983 concerning his in-cell toilet and sink at the Stateville Correctional Center. Because the facts alleged by Plaintiff in his original complaint did not establish a basis for liability under Section 1983, the Court dismissed it on screening. (*See* Dkt. 20.) Plaintiff's amended complaint is now before the Court for continued screening under 28 U.S.C. § 1915A. As with Plaintiff's earlier pleading, the Court must screen the amended complaint and dismiss it, or any of its claims, if the complaint or claim is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from an immune defendant. *See* 28 U.S.C. § 1915A; *Jones v. Bock,* 549 U.S. 199, 214 (2007). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). It also must contain enough facts, accepted as true, to "state a claim to relief that is plausible on its face," which means that the pleaded facts must show "more than a sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts must construe a *pro se* plaintiff's allegations liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam). Courts must also "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff's favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

Plaintiff's amended complaint largely tracks his original complaint. As with the original complaint, Plaintiff brings the amended complaint against Warden Gomez, Placement Officer Thornton, an unidentified maintenance supervisor, and 23 John Doe and Jane Doe correctional officers. (Dkt. 23 at 1–6.) According to Plaintiff, he was housed in Edward House, Cell 702 with an inoperative toilet and sink for six days, namely, from April 8, 2021, to April 13, 2021. (*Id.* at 27.) Plaintiff alleges that the toilet and sink were "completely shut off and did not work at all[.]" (*Id.*) Only small drips of water came out of the in-cell sink faucet when Plaintiff pushed the hot- and cold-water buttons, and the toilet had standing waste and emitted a foul odor. (*Id.*)

Over the six-day period, Plaintiff "called" 23 correctional officers about the conditions in Cell 702. (*Id.*) Plaintiff identified the officers as John and Jane Does numbers 1-23, and his allegations state that he had a single contact with each officer. (*Id.*) As Plaintiff asserts, he explained to the officers that "his toilet completely did not work or neither flushed or had any pressure coming from the button as well as the hot- and cold-water buttons from the sink did not work." (*Id.* at 28.) Plaintiff also complained about the odor coming from the toilet. (*Id.*) In addition, Plaintiff allegedly "complained of needing to use the bathroom and a working sink" but was "denied" by each of the 23 officers.[1] (*Id.*) When Plaintiff asked to have the toilet and sink repaired or for him to be moved to a different cell, each of the 23 officers allegedly provided the identical response: "Welcome to E-house, they fix it when they want, and they will not move you." (*Id.*)

Plaintiff "wrote letters" to Warden Gomez, Placement Officer Thornton, and "Maintenance Supervisor John/Jane Doe" asking to be moved. (*Id.*) Plaintiff did not elaborate on the content of those letters in his amended complaint, but he attached to his original complaint purported copies of the letters. (*See* Dkt. 19 at 41–55.) Dated April 8, 2021, the letters stated that Plaintiff's toilet did not flush, the toilet contained feces and urine as well as insects flying and crawling around it, and the "sink water" did not work. (*Id.* at 41–43.) Plaintiff asked to be moved or to have the fixtures repaired (*id.*), and the letter to the Warden mentioned that Plaintiff "wrote [to] maintenance" and was "talking to correctional officers to have it fixed or be moved." (*Id.* at 43.) The remaining letters are nearly identical to the April 8, 2021 letters, except that, beginning on April 9, 2021, the letters include references to Plaintiff's health: "I am still having stomach pains, headaches, and throwing up and rashes, and the shakes," and "I am having severe physical and mental pains." (*Id.* at 44–55.) Plaintiff's letters prompted no response, and Plaintiff alleges that the deficient conditions did not change. (Dkt. 23 at 28, 26 ("defendants" took "no corrective action").)

Plaintiff contends that he was confined with the clogged toilet and malfunctioning sink for "up to 24 hours each day" and mentions, without elaboration, that he "was denied any alternative to use the bathroom or have drinking water."[2] (*Id.* at 25–26.) Plaintiff also alleges that he experienced headaches, stomach pains, dizziness, blurred vision, nausea, vomiting, and breathing issues because of "the inhumane conditions." (*Id.* at 28.)

---

[1] Allegations that Plaintiff was denied use of a toilet or sink as well as drinking water appear for the first time in the amended complaint. These allegations were not included in the original complaint or in the grievance Plaintiff submitted about his cell conditions despite inclusion of greater detail in the original complaint than in the amended complaint. (*See, e.g.,* Dkt. 19 at 21-25, 29-32, 36.)

[2] *See supra* n.1.

Plaintiff's amended allegations do not cure the defects in Plaintiff's earlier pleading. An Eighth Amendment deliberate indifference claim includes "both an objective and subjective component." *Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018); *see Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To state a claim based on unconstitutional living conditions, a prisoner must allege facts showing that: (1) the conditions were objectively serious enough to deny him "the minimal civilized measure of life's necessities"; and (2) the defendant "knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (quoting *Farmer*, 511 U.S. at 834).

As the Court previously explained (*see* Dkt. 20), access to a working toilet generally is considered a civilized measure of life's necessities, *see Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012), but the Constitution "does not require that prisoners enjoy immediately available and flushable toilets at all times," *Ashley v. Mollenhauer*, No. 2:12 C 468, 2013 WL 432907, at *3 (N.D. Ind. Jan. 31, 2013). Prisoners and nonincarcerated persons occasionally encounter toilet problems that need the attention of a plumber, so "[a] single clogged toilet does not violate the United States Constitution." *Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019); *see, e.g., Akindele v. Arce*, No. 15 C 05952, 2017 WL 467683, at *4 (N.D. Ill. Feb. 3, 2017) (more than a week in cell with nonflushing toilet containing human waste that "surely caus[ed] foul odors" did not deny inmate "the minimal civilized measure of life's necessities"); *Muhammad v. Wilson*, No. 05 C 00743, 2006 WL 2413710, at *2-3 (N.D. Ill. Aug. 16, 2006) (housing inmate in cell where neither toilet nor sink worked for seven days did not rise to constitutional violation). That Plaintiff was dissatisfied with the water pressure at his in-cell sink also does not support a claim under Section 1983 because the Constitution does not mandate that prisoners receive a working in-cell sink. *See Downs v. Carter*, No. 13 C 03998, 2016 WL 1660491, at *8 (N.D. Ill. Apr. 27, 2016) (collecting cases regarding in-cell water); *Maze v. Ill. Cook Cnty. Jail*, Case No. 19 C 4661, Dkt. 12 (N.D. Ill. Sept. 13, 2019) (in-cell sink malfunctioning for 20 days did not state a claim).

But although the conditions alleged by Plaintiff may be insufficient to show a constitutional violation, the Court will assume—at this pleading stage—that Plaintiff could satisfy the objective component of an Eighth Amendment claim. There has been some recent development in this Circuit concerning the point at which a clogged in-cell toilet triggers constitutional concerns. *See, e.g., Hardeman*, 933 F.3d at 823 (although "[a] single clogged toilet does not violate the Constitution, and prisoners are not entitled to Fiji Water on demand . . . [,] a defendant cannot purposefully deny water until a prisoner is on the brink of death or force a prisoner permanently to live surrounded by her own excrement and that of others"); *Bell v. Dart*, 807 F. App'x 562 (7th 2020) (nonprecedential disposition) (lack of in-cell water for six days, failure to provide bottled water so detainee could take medications, and an accumulation of human excrement in toilet might violate the Constitution). To be sure, Plaintiff's allegation that he "was denied any alternative to use the bathroom or have drinking water" constitutes little more than a bare recitation of the elements of a conditions-of-confinement claim. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers . . . 'a formulaic recitation of the elements of a cause of action will not' suffice" to state a claim) (quoting *Twombly*, 550 U.S. at 555). And the facts as alleged by Plaintiff could ultimately be viewed as failing to cross the line from a temporary inconvenience to a constitutional violation:

3

Plaintiff was housed in a cell with a clogged toilet and inoperative sink for some unspecified hours over a six-day period,[3] but Plaintiff does not allege that he had zero access to drinking water or time outside of his cell to relieve him, if only temporarily, from the execrable condition of a clogged toilet. *Cf. Bell*, 807 F. App'x at 563-64. There is also no suggestion that Plaintiff was "on the brink of death" as contemplated by *Hardeman*. These are factual distinctions that could at some point make a difference between this case, on one hand, and *Hardeman* and *Bell* on the other. But at this screening stage, the Court must draw all "fair inferences" in Plaintiff's favor. *Bell*, 807 F. App'x at 564. Doing just that, the Court holds that Plaintiff's allegations set forth a plausible claim that the conditions Plaintiff faced were objectively serious enough to deny him "the minimal civilized measure of life's necessities." *See Townsend*, 522 F.3d at 773.

Plaintiff's claim, however, fails at the second step of the deliberate indifference test: whether any Defendant *knew* that Plaintiff "faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Id.* (quoting *Farmer*, 511 U.S. at 834). Plaintiff alleges that he "complained" to 23 unidentified corrections officers about the fact that his toilet and sink did not work, that the toilet contained human waste, and that he "need[ed] to use the bathroom and [needed] a working sink." Plaintiff had a single interaction with each of the 23 officers and alleges that he told the officers the exact same thing about his toilet and sink.[4] (Dkt. 23 at 27-28.)

Plaintiff's alleged facts do not show that Plaintiff told the officers he needed drinking water, that any of the officers knew he lacked drinking water, or that any of the officers acted consciously to deny his requests for drinking water. Moreover, any implication that Plaintiff asked any of the 23 officers for drinking water or to use a toilet outside his cell lacks context. These alleged facts thus fail plausibly to show that any of the officers acted with the requisite level of culpability. *See Owens v. Duncan*, 788 F. App'x 371, 374–375 (7th Cir. 2019) (nonprecedential disposition) (affirming dismissal of claims against prison personnel with whom prisoner had a single interaction because "bare bones" allegations did "not amount to a plausible claim that the[] defendants knew of and disregarded a serious" risk of harm); *see also Iqbal*, 556 U.S. at 678 (pleaded facts must show "more than a sheer possibility that a defendant acted unlawfully").

Plaintiff's allegations against Warden Gomez, Placement Officer Thornton, and the unnamed "maintenance supervisor" are similarly deficient to show a plausible claim under Section 1983 that these Defendants acted "purposefully, knowingly, or perhaps even recklessly." *Miranda*

---

[3] Plaintiff alleges that he was confined "up to 24 hours a day," but this allegation, too, is vague and lacks context.

[4] This is not the only time Plaintiff has employed a strategy of captioning many John and Jane Doe defendants and then making the same allegations against each defendant. *See, e.g., Titus v. John/Jane Does*, No. 23 C 05544 (N.D. Ill.) (naming 127 Doe defendants). Plaintiff's strategy is deficient given that liability under Section 1983 is predicated on individual conduct. Although it is "understandable that an inmate may not always know the exact name of an intended defendant, the naming of" many "unidentified defendants makes it seem highly unlikely that Plaintiff could ever accurately identify specific individuals, let alone make out individualized claims against them for their personal involvement in" events that took place years ago. *Sharples v. Pritzker*, No. 21 C 1065, 2023 WL 3726751, at *3 (S.D. Ill. May 30, 2023).

*v. Cty. of Lake*, 900 F.3d 335, 353 (7th Cir. 2018). Plaintiff alleges only that he "wrote letters" to the officials asking to be moved. (*See* Dkt. 23 at 28.) Plaintiff's letters attached to the original complaint (*see* Dkt. 19 at 41–55) reflect that Plaintiff did not feel well and asked to be moved or to have his toilet and sink repaired because the toilet did not flush, waste was present in the toilet along with insects, and the sink did not work. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (district court may consider "documents attached to the complaint [and] documents that are critical to the complaint and referred to in it" when ruling on a motion to dismiss). Assuming the officials received the letters, the facts conveyed in the letters are not enough to alert a prison official to a constitutional violation that required intervention—especially in view of the relatively short timeline present in this case. *See Hardeman*, 933 F.3d at 823 ("A single clogged toilet does not violate the Constitution[.]"); *Farmer*, 511 U.S. at 837 ("the official must [] be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists"). Plaintiff wrote those officials over the course of six days but then stopped after he contacted "maintenance" and talked to corrections staff. Merely that the officials did not respond to Plaintiff's six-day correspondence campaign does not suggest that the letters were ignored, especially in view of the fact that Plaintiff stopped sending letters (which could have suggested to the officials that the plumbing problem had been fixed) and that prison officials often have many obligations. *See, e.g., Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (high-level officials, like wardens of prisons, may delegate tasks to appropriate personnel).

Plaintiff initiated this lawsuit nearly two years after the complained-of events, and the time to add defendants has passed. *See Herrera v. Cleveland*, 8 F.4th 493 (7th Cir. 2021). Plaintiff explains that he did not identify the defendant correctional officers by name because "employees assigned to the Stateville Correctional Center . . . refuse to wear their identification cards as required preventing prisoners to know their names to file grievances, etc." (Dkt. 23 at 25.) Plaintiff's proffered reason for failing to identify even one of the correctional officers to whom he complained, by name or badge number, during the past three years is unpersuasive given that Plaintiff remained in his housing for nearly three months after the plumbing issues in his cell were resolved (*see id.*, at 41) and was able to identify the individuals by their physical characteristics, (*id.* at 35-38). Stateville prisoners routinely identify corrections and medical staff by name when initiating a lawsuit. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) ("Making the plausibility determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."); *Corbeil v. Entzel*, No. 19 C 1373, 2020 WL 3489985, at *5 (C.D. Ill. June 26, 2020) ("Unit officers and inmates are in constant contact with each other[.]").

For these reasons, the Court dismisses Plaintiff's amended complaint for failure to state a claim. Plaintiff received one amendment as a matter of course. *See* Fed. R. Civ. P. 15(a)(1). Plaintiff has since asked (Dkt. 27) for leave to submit a second amended complaint, but the proposed amendments do not cure the defects identified in this order. Plaintiff's proposed second amended complaint (Dkt. 28), although shorter than his original, suffers from many of the same flaws as the original complaint. (*See* Jan. 2, 2024 Order (Dkt. 20) (discussing defects in original complaint).) Plaintiff's proposed second amended complaint is substantively identical to the amended complaint (Dkt. 23); Plaintiff seeks only to add highly generalized physical descriptions for the 23 John Doe and Jane Doe defendants. Adding generic physical descriptions, however,

does not preclude dismissal. Despite having had nearly three years to identify the correctional officer defendants by name, Plaintiff did not do so; his reasons for not doing so are unpersuasive. There is no basis to hold that allowing the opportunity for further amendment will, consistent with Rule 11 of the Federal Rules of Civil Procedure, change the outcome of this case. Accordingly, this dismissal is with prejudice.

If Plaintiff wants to appeal this ruling, he must file a notice of appeal with this Court within 30 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Plaintiff appeals, he must pay the $605 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court stating the issues he intends to present on appeal. *See* Fed. R. App. P. 24(a)(1).

SO ORDERED in No. 23-cv-02036.

Date: March 29, 2024

JOHN F. KNESS
United States District Judge