**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals
**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 19, 2024*
Decided December 3, 2024

**Before**

AMY J. ST. EVE, *Circuit Judge*

JOHN Z. LEE, *Circuit Judge*

JOSHUA P. KOLAR, *Circuit Judge*

No. 24-1714

ADAM TITUS,
*Plaintiff-Appellant*,

*v*.

DAVID GOMEZ, et al.,
*Defendants-Appellees*.

Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.

No. 23-cv-02036

John F. Kness,
*Judge*.

**O R D E R**

Adam Titus, an Illinois state prisoner, sued several prison officials under the Eighth Amendment for subjecting him to a prolonged stay in a cell with an unsanitary and inoperable toilet and sink. *See* 42 U.S.C. § 1983. The district court screened Titus's amended complaint, *see* 28 U.S.C. § 1915A, and dismissed it with prejudice for failure to

* We have agreed to decide the case without oral argument because the brief and the record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

state a claim. On appeal, Titus asserts that he alleged sufficient facts to state a violation of his constitutional rights. We agree, and we therefore vacate and remand for further proceedings.

We draw the facts of this case from the allegations in the amended complaint, which are assumed to be true, along with documents that Titus attached as exhibits. *See Williamson v. Curran*, 714 F.3d 432, 435–36 (7th Cir. 2013). In April 2021, Titus and another inmate were transferred to a cell in Stateville Correctional Center's Edward House. Titus described the cell as "condemned" and both the toilet and the sink as inoperable. The toilet contained urine and feces, emitting a strong odor. Titus said he had to endure the conditions in his cell for "up to 24 hours each day."

Over a six-day period that first month, Titus and his cellmate complained to 23 correctional officers, asking that the plumbing be fixed or that they be moved to a different cell. The officers repeatedly rejected these requests, as well as requests to use a functioning restroom and access safe drinking water. Titus also sought relief through letters to the warden, David Gomez; a placement officer named Thornton; and an unnamed maintenance supervisor. The letters went unanswered, and no work order was filed. Titus said he "suffered from headaches, stomach pains, dizziness, blurred vision …, [nausea], vomiting, [and] breathing issues." He was not moved out of the cell until three months later.

In March 2023, Titus filed a form § 1983 complaint (which, with attachments, ran 66 pages) against Gomez, Thompson, the maintenance supervisor, and the unnamed correctional officers, alleging deliberate indifference to his inhumane conditions of confinement. The district court screened the complaint and dismissed it without prejudice for failure to state a claim. The court explained that Titus's alleged lack of access to a working toilet and sink was not sufficiently serious to plead a constitutional violation, and that Titus's letters to the prison officials were insufficient to confer § 1983 liability on those parties. The court informed Titus that he "should consider that he cannot proceed against unidentified parties … and that the time to identify proper defendants to his claim likely ha[d] passed."

Titus amended his complaint to add allegations that he was denied use of a working toilet or sink and that he was not provided drinking water. The district court concluded that Titus failed to state a violation of his Eighth Amendment rights, and dismissed the amended complaint with prejudice. The court assumed that the conditions were sufficiently serious but determined that Titus failed to plead allegations

that any of the defendants acted with deliberate indifference. The court also denied Titus's motion for leave to amend his complaint, stating that amendment would fail to "cure the defects identified" in the screening order and that the time to identify the unnamed defendants had passed.

Titus—represented at this point by counsel—appealed, arguing that he had pleaded sufficient facts to state an Eighth Amendment claim. He alluded to allegations that he wrote officials of the "physical pain and mental anguish" that he experienced from his "oppressive" conditions, and that they refused to act. He also compared his complaint to those in two district court cases in which Stateville prisoners were deemed to have stated a claim of deliberate indifference to unconstitutional conditions of confinement. In those cases, Titus noted, the district court ordered that interrogatories be served upon the warden for the purpose of identifying unnamed defendants.

Four days after Titus filed his brief, the district judge issued an order expressing his inclination to reconsider the dismissal order based on appellate counsel's clarification of "facts that previously had been obscured in [Titus's] *pro se* pleading." The judge asked this court to remand the case so that he could vacate his judgment and reconsider his ruling.

We ordered Titus to respond to the district court's order. Titus responded that, "in light of the district court's seeming acknowledgment that he has stated a valid claim, [he] believe[d] that his appeal [was] appropriate for summary disposition." We then ordered that "this appeal will proceed to resolution on the merits."

Titus challenges the dismissal of his complaint on grounds that the district court (1) failed to make reasonable inferences in his favor; and (2) ignored allegations that, taken together, sufficiently plead an Eighth Amendment claim. We review the district court's screening decision order de novo, drawing all reasonable inferences in Titus's favor. *See Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020). A pro se plaintiff need plead only a plausible claim for relief—which is "not an exacting standard." *Balle v. Kennedy*, 73 F.4th 545, 557 (7th Cir. 2023) (citation omitted). Because Titus was pro se when he filed his amended complaint, we construe his allegations liberally. *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015). To state an unconstitutional-conditions-of-confinement claim under the Eighth Amendment, Titus must allege that the defendants were subjectively aware of but disregarded sufficiently serious prison conditions that created an excessive risk to his health and safety. *Balle*, 73 F.4th at 552, 557–58.

Titus has adequately pleaded that the defendants violated his Eighth Amendment rights. As the district court pointed out, with the assistance of counsel we are able to see more clearly the allegations Titus pled. First, regarding the objective component of an Eighth Amendment claim, Titus alleged that his conditions of confinement were serious. Although a clogged toilet does not violate constitutional rights, prolonged exposure to an "unflushable toilet[]" that contains "standing feces and urine" can create inhumane conditions. *Hardeman v. Curran*, 933 F.3d 816, 823–24 (7th Cir. 2019). This is especially so where, as here, Titus alleged that the toilet created a terrible stench, and that he had no access to a functional restroom. *See id.* at 824; *Taylor v. Riojas*, 592 U.S. 7, 8 (2020) (prisoner's conditions unconstitutional where he was subjected to four-day stay in cell covered in feces); *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) (same, where toilet had "rusted out" and the cell "smell[ed] of human waste"). Titus further alleged that his sink provided insufficient water to drink, and that the correctional officers ignored his multiple requests for safe, drinkable water. *See Hardeman*, 933 F.3d at 824; *Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (six-day stint in a feces-covered cell without working sink or toilet was inhumane). These contentions, taken together, suffice to assert a claim of an unconstitutional condition of confinement.

As for the subjective component of an Eight Amendment claim, Titus plausibly alleged that the defendants were deliberately indifferent. Here, Titus was required to allege that the defendants "facilitate[d], approve[d], condone[d], or 'turn[ed] a blind eye'" to the conditions. *Perez*, 792 F.3d at 781 (quoting *Vance v. Peters*, 97 F.3d 987, 992–93 (7th Cir. 1996)); *see Santiago v. Walls*, 599 F.3d 749, 759 (7th Cir. 2010) (allegations that prisoner sent grievance to warden and warden took no action were sufficient to plead a claim that the warden "actually knew or consciously turned a blind eye toward an obvious risk"). He asserts that he informed the correctional officers of his situation and that the officers refused to help; this is sufficient to state a claim. As we have noted in prior cases, "prisoner requests for relief that fall on 'deaf ears' may evidence deliberate indifference." *Perez*, 792 F.3d at 782 (quoting *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997)). Titus also alleged that Gomez, Thornton, and the maintenance supervisor turned a blind eye toward his circumstances when he says he repeatedly wrote them, and they declined to act. *See id.* at 781. Although these defendants may not have received Titus's letters within this six-day period, we—at the pleadings stage—draw the inference in Titus's favor that they did.

Finally, the district court erred in concluding that the unnamed defendants should be dismissed solely because the time to substitute them with their true identities

had passed. "There's nothing wrong with using placeholder defendants, then using discovery to learn and substitute names"—as long as the substitution is completed before the statute of limitations expires. *Rodriguez v. McCloughen*, 49 F.4th 1120, 1121 (7th Cir. 2022). Here, Titus's ability to discover the identities of the unnamed defendants and timely serve them (i.e., before the two-year limitations period ran) was delayed by the time necessary to screen his complaint—a delay that arguably constitutes "good cause" under the relation-back doctrine of Federal Rule of Civil Procedure 15(c)(1)(C). *Id.* at 1122–23. On remand, the district court should consider in the first instance whether the late substitution of the proposed defendants would prejudice the defendants or be otherwise incompatible with Rule 15(c)(1)(C). *See id.* at 1123.

For these reasons, we VACATE the judgment and REMAND the case for further proceedings.